UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2015-LC19 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, acting by and through Midland Loan Services, a Division of PNC Bank, National Association, as Special Servicer under the Pooling and Servicing Agreement dated as of February 1, 2015,<br><br>Plaintiff,<br><br>v.<br><br>5615 NORTHERN LLC and SPYRO E. AVDOULOS,<br><br>Defendants. | Civil Action File No.<br>_____ |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association ("Trustee"), as Trustee, for the Benefit of the Holders of COMM 2015-LC19 Mortgage Trust Commercial Mortgage Pass-Through Certificates (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff") acting by and through Midland Loan Services, a Division of PNC Bank, National Association ("Special Servicer") as Special Servicer under the Pooling and Servicing Agreement dated as of February 1, 2015 (the "PSA"), states its complaint as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Sioux Falls, South Dakota.

2.    Trustee is the duly appointed and presently serving Trustee of the Trust created under the PSA.

16572546V.2 049954/1174163

3.      Trustee, not individually, but solely in its capacity as Trustee under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.  Based upon the South Dakota citizenship of Trustee, Plaintiff is a citizen of South Dakota.

4.      Defendant 5615 Northern LLC ("Borrower") is a New York limited liability company having a principal place of business located at 25-19 Borden Avenue, Long Island City, New York 11101.  Borrower is the owner of certain real property and improvements located at the real property commonly known as 56-15 Northern Boulevard, Woodside, New York 11377 and more particularly described in Exhibit 1 annexed hereto (the "Property").  As Borrower is a limited liability company, its citizenship is determined by that of its members: 5615 Northern Blvd. Corp., a New York corporation, defendant Spyro Avdoulos ("Guarantor"), a New York resident, and Margarita Avdoulos, a New York resident.  Based upon the New York citizenship of Borrower's members, Borrower is a citizen of New York.

5.      Guarantor, an individual and resident of New York, guaranteed Borrower's obligations pursuant to the Guaranty (as defined in paragraph 15 of this Complaint).

6.      Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      Pursuant to Section 11.3(b) of the Loan Agreement (as defined in paragraph 10 of this Complaint), Borrower may be served with process through its authorized agent under the Loan Agreement, Evangelos N. Karoutous, Esq., at 79-25 150th Street, Suite L12, Flushing, New York 11367.

2

8.      Further pursuant to Section 11.3(b) of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST [PLAINTIFF] OR BORROWER ARISING OUT OF OR RELATING TO [THE LOAN] AGREEMENT MAY AT [PLAINTIFF]'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

9.      Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3).

## FACTUAL BACKGROUND

### FIRST COUNT
### (Mortgage Foreclosure)

**A.      The Loan.**

10.      By Loan Agreement dated as of December 17, 2014 (the "Loan Agreement"), Ladder Capital Finance LLC ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrower in the original principal amount of $9,000,000.00 (the "Loan").

11.      As evidence of the Loan, Borrower, _inter alia_, executed and delivered to Original Lender a Consolidated, Amended and Restated Promissory Note dated December 17, 2014 and in the original principal amount of $9,000,000.00 (the "Note").

3

12.     As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of December 17, 2014 (the "Mortgage") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in the Property.  On January 6, 2015, Original Lender recorded the Mortgage with the Office of City Register of the City of New York (the "City Register's Office") as City Register File Number ("CRFN") 2015000004406.

13.     The Mortgage also includes a security interest in favor of the holder of the Mortgage in, inter alia, all machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), furniture and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, located upon the Property, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Property and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Property, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Property (collectively, the "Collateral").

14.     As additional collateral security for the payment of the Loan, Borrower executed, acknowledged and delivered to Original Lender an Assignment of Leases and Rents dated as of December 17, 2014 (the "ALR") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by the Property.  On January 6, 2015, Original Lender recorded the ALR with the City Register's Office as CRFN 2015000004407.

4

16572546V.2 049954/1174163

15.    Also on or about December 17, 2014, to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed a Guaranty of Recourse Obligations (the "Guaranty"), whereby he irrevocably and unconditionally guaranteed to Original Lender and its successors and assigns the payment and performance of the guaranteed obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. (The Loan Agreement, the Note, the Mortgage, the ALR, the Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1]

**B.    Assignment of the Loan Documents.**

**i.    Assignment to First Interim Holder.**

16.    Original Lender executed and delivered an allonge to the Note (the "First Interim Allonge") in favor of Tuebor Captive Insurance Company LLC ("First Interim Holder"), pursuant to which Original Lender transferred to First Interim Holder all of its rights, title and interest in and to the Note. By virtue of the First Interim Allonge, First Interim Holder became the holder of the Note.

17.    Original Lender also executed and delivered an Assignment of Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated December 18, 2014 and recorded on January 22, 2015 in the City Register's Office as CRFN 2015000025192 (the "First Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to First Interim Holder all rights, title and interest in and to the Mortgage. By virtue of the First Interim Assignment of Mortgage, First Interim Holder became the holder of the Mortgage.

---

[1]  Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

16572546V.2 049954/1174163

18.    Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents, dated December 18, 2014 and recorded on January 22, 2015 in the City Register's Office as CRFN 2015000025193 (the "First Interim Assignment of ALR"), pursuant to which Original Lender transferred to First Interim Holder all rights, title and interest in and to the ALR.  By virtue of the First Interim Assignment of ALR, First Interim Holder became the holder of the ALR.

ii.    **Assignment Back to Original Lender.**

19.    Thereafter, First Interim Holder executed and delivered an allonge to the Note dated December 29, 2014 (the "Original Lender Allonge") in favor of Original Lender, pursuant to which First Interim Holder transferred back to Original Lender all of its rights, title and interest in and to the Note.  By virtue of the Original Lender Allonge, Original Lender became the holder of the Note once again.

20.    First Interim Holder also executed and delivered an Assignment of Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated December 29, 2014 and recorded on March 30, 2015 in the City Register's Office as CRFN 2015000106847 (the "Original Lender Assignment of Mortgage"), pursuant to which First Interim Holder transferred back to Original Lender all rights, title and interest in and to the Mortgage.  By virtue of the Original Lender Assignment of Mortgage, Original Lender became the holder of the Mortgage once again.

21.    First Interim Holder also executed and delivered an Assignment of Assignment of Leases and Rents, dated December 29, 2014 and recorded on March 30, 2015 in the City Register's Office as CRFN 2015000106848 (the "Original Lender Assignment of ALR"), pursuant to which First Interim Holder transferred back to Original Lender all rights, title

6

and interest in and to the ALR. By virtue of the Original Lender Assignment of ALR, Original Lender became the holder of the ALR once again.

### iii.    Assignment to Second Interim Holder.

22.    Thereafter, Original Lender executed and delivered an allonge to the Note (the "Second Interim Allonge") in favor of Tuebor TRS II LLC ("Second Interim Holder"), pursuant to which Original Lender transferred to Second Interim Holder all of its rights, title and interest in and to the Note. By virtue of the Second Interim Allonge, Second Interim Holder became the holder of the Note.

23.    Original Lender also executed and delivered an Assignment of Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated January 15, 2015 and recorded on March 30, 2015 in the City Register's Office as CRFN 2015000106850 (the "Second Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to Second Interim Holder all rights, title and interest in and to the Mortgage. By virtue of the Second Interim Assignment of Mortgage, Second Interim Holder became the holder of the Mortgage.

24.    Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents, dated January 15, 2015 and recorded on March 30, 2015 in the City Register's Office as CRFN 2015000106851 (the "Second Interim Assignment of ALR"), pursuant to which Original Lender transferred to Second Interim Holder all rights, title and interest in and to the ALR. By virtue of the Second Interim Assignment of ALR, Second Interim Holder became the holder of the ALR.

### iv.    Assignment to Plaintiff.

25.    Finally, Second Interim Holder executed and delivered an allonge to the Note (the "Plaintiff Allonge") in favor of Plaintiff, pursuant to which Second Interim Holder

7

transferred to Plaintiff all of its rights, title and interest in and to the Note.  By virtue of the Plaintiff Allonge, Plaintiff became the holder of the Note.

26.    Second Interim Holder also executed and delivered an Assignment of Mortgage, dated February 4, 2015 and recorded on April 27, 2015 in the City Register's Office as CRFN 2015000139256 (the "Plaintiff Assignment of Mortgage"), pursuant to which Second Interim Holder transferred to Plaintiff all rights, title and interest in and to the Mortgage.  By virtue of the Plaintiff Assignment of Mortgage, Plaintiff became the holder of the Mortgage.

27.    Second Interim Holder also executed and delivered an Assignment of Assignment of Leases and Rents, dated February 4, 2015 and recorded on April 27, 2015 in the City Register's Office as CRFN 2015000139257 (the "Plaintiff Assignment of ALR"), pursuant to which Second Interim Holder transferred to Plaintiff all rights, title and interest in and to the ALR.  By virtue of the Plaintiff Assignment of ALR, Plaintiff became the holder of the ALR.

**C.    Borrower's Defaults Under the Loan Documents.**

**i.    Payment Default**

28.    Pursuant to the express terms of the Loan Documents, the Maturity Date of the Loan is January 6, 2020.

29.    Pursuant to Section 2.3.2 of the Loan Agreement, "Borrower shall pay to Lender on the Maturity Date the Outstanding Principal Balance, all accrued and unpaid interest and all other amounts due under the Loan Documents."

30.    Section 10.1(a)(i) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "the payment of the Obligations due on the Maturity Date is not paid when due[.]"

31.    By notice dated February 7, 2020 (the "Notice of Default"), Plaintiff, through counsel, notified Borrower that an Event of Default has occurred and is continuing under

8

the Loan Documents since January 6, 2020 as a result of, inter alia, Borrower's failure to pay the Obligations due on the Maturity Date (the "Payment Default").

 **ii.** **The Lease Default**

  32. Pursuant to Section 4.1.10(b) of the Loan Agreement, Borrower was obliged to, inter alia: (a) enforce the terms, covenants and conditions contained in the Leases upon the part of the Tenants thereunder to be observed or performed in a commercially reasonable manner; provided, however, Borrower shall not terminate or accept a surrender of a Lease without Lender's prior written approval; (b) cannot alter, modify or change any Lease so as to change the amount of or payment date for rent, change the expiration date, grant any option for additional space or term, materially reduce the obligations of the Tenant or increase the obligations of the lessor; (c) promptly furnish to Lender any notice of default or termination received by Borrower from any Tenant, and any notice of default or termination given by Borrower to any Tenant; and (d) provide Lender with notice of a Tenant "going dark" under its Lease or a Tenant delivering notice of its intent to "go dark" promptly after obtaining knowledge thereof (collectively, "Borrower's Lease Obligations").

  33. Section 10.1(a)(xix)(B)(1) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "Borrower shall continue to be in Default under any other terms, covenants or conditions of this Agreement not specified in subsections (i) to (xviii) above . . . for thirty days after . . . Borrower's knowledge thereof [.]"

  34. By the Notice of Default, Plaintiff, through counsel, further notified Borrower that an Event of Default has occurred and is continuing under the Loan Documents since February 21, 2019 as a result of, inter alia, Borrower's failure to uphold the Borrower's Lease Obligations with respect to Mayors Auto Group LLC's election to terminate its lease on or about January 22, 2019 (the "Lease Default").

16572546V.2 049954/1174163

### iii.    **Cash Management Default**

35.    Pursuant to Section 6.1 of the Loan Agreement, during a Cash Sweep Event Period, Borrower is obliged to provide a Cash Management Activation Notice to the Clearing Bank directing all funds be swept on a daily basis into an Eligible Account at the Cash Management Bank.

36.    As a result of the Lease Default, a Cash Sweep Significant Tenant Trigger occurred, which commenced a Cash Sweep Event Period since at least January 22, 2019.

37.    By the Notice of Default, Plaintiff, through counsel, further notified Borrower that an Event of Default has occurred and is continuing under the Loan Documents since February 21, 2019 as a result of, inter alia, Borrower's failure to deliver the Cash Management Activation Notice (the "Cash Management Default").

38.    Despite receipt of the Notice of Default, Borrower has failed to cure the existing Events of Default and satisfy its obligations under the Loan Documents.

39.    As a result of the Events of Default, there is now due, owing and payable to Plaintiff under the Loan Documents: (i) approximately $8,286,037.41 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Loan Documents.

40.    In order to protect the lien and security represented by the Mortgage during the pendency of this foreclosure action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property. Plaintiff asks that any amount so paid and expended by it during the pendency of this foreclosure action be added, pursuant to the Mortgage and the Loan Agreement, to its claim and be repaid to Plaintiff from the proceeds of the sale of the Property, together with interest thereon from the date that such expenditures are made, and that

10

the same be added to the amounts due Plaintiff and secured by the Mortgage and the Loan Agreement.

41.    The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the liens of the Mortgage.

42.    No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.    Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B.    Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

C.    Adjudging that the Property be sold according to law to satisfy the amounts due to Plaintiff;

D.    Barring and foreclosing the defendants, and each of them, from all equity of redemption in and to the Property;

E.    Directing that a receiver be appointed to take immediate possession of the Property; and

F.    Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Security Interest Foreclosure)

43.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 42 above, as if the same were set forth and repeated at length herein.

11

16572546V.2 049954/1174163

44.    When Borrower executed the Mortgage, it granted valid and enforceable security interests in the Collateral.

45.    To further perfect its interest in the Collateral, on December 23, 2014, Original Lender filed a Uniform Commercial Code Financing Statement with the New York Secretary of State ("NY SOS") as File Number 201412230717483 (the "State UCC-1"). The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

46.    By Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on April 2, 2015 as File Number 201504020164645, Original Lender assigned the State UCC-1 to First Interim Holder.

47.    By Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on April 8, 2015 as File Number 201504080176387, First Interim Holder assigned the State UCC-1 back to Original Lender.

48.    By Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on April 14, 2015 as File Number 201504140184298, Original Lender assigned the State UCC-1 to Second Interim Holder.

49.    Finally, by Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on May 4, 2015 as File Number 201505048167025, Second Interim Holder assigned the State UCC-1 to Plaintiff.

50.    Additionally, on July 12, 2019, Plaintiff filed a Uniform Commercial Code Continuation with the NY SOS as  File Number 201907125896886 (the "State UCC Continuation"). The State UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

51.    To further perfect its interest in the Collateral, on January 6, 2015, Original Lender recorded a Uniform Commercial Code Financing Statement with the City

16572546V.2 049954/1174163

Register's Office as CRFN 2015000004408 (the "County UCC-1"). The County UCC-1 names Original Lender as the secured party and Borrower as the debtor.

52.    By Uniform Commercial Code Financing Statement Amendment recorded with the City Register's Office on January 22, 2015 as CRFN 2015000025194, Original Lender assigned the County UCC-1 to First Interim Holder.

53.    By Uniform Commercial Code Financing Statement Amendment recorded with the City Register's Office on March 30, 2015 as CRFN 2015000106849, First Interim Holder assigned the County UCC-1 back to Original Lender.

54.    By Uniform Commercial Code Financing Statement Amendment recorded with the City Register's Office on March 30, 2015 as CRFN 2015000106852, Original Lender assigned the County UCC-1 to Second Interim Holder.

55.    Finally, by Uniform Commercial Code Financing Statement Amendment recorded with the City Register's Office on April 27, 2015 as CRFN 2015000139258, Second Interim Holder assigned the County UCC-1 to Plaintiff.

56.    Additionally, on July 17, 2019, Plaintiff recorded a Uniform Commercial Code Continuation with the City Register's Office as CRFN 2019000225563 (the "County UCC Continuation"). The County UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

57.    Plaintiff holds a duly perfected security interest in the Collateral by virtue of the recorded Mortgage, the recorded County UCC-1, the filed State UCC-1, and the subsequent assignments and continuations thereof.

58.    Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Property at a single public sale.

16572546V.2 049954/1174163

59.    No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.    Adjudging that the Collateral be sold together with the Property at a single public sale to satisfy the amounts due to Plaintiff; and

B.    Barring and foreclosing the defendants of all equity of redemption in and to the Collateral.

### THIRD COUNT
**(Possession)**

60.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 59 above, as if the same were set forth and repeated at length herein.

61.    By reason of Borrower's default under the terms of the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral located.

62.    Borrower is now in possession of the Property and has deprived, and continue to deprive, Plaintiff of possession of the Property and Collateral.

**WHEREFORE**, Plaintiff demands judgment against the defendants:

A.    Granting Plaintiff, its assignee or the purchaser of the Property at the foreclosure sale, possession of the Property and Collateral;

B.    Awarding Plaintiff damages for mesne profits; and

C.    Granting Plaintiff its costs of suit, including reasonable attorneys' fees.

### FOURTH COUNT
**(Appointment of a Receiver)**

63.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 62 above, as if the same were set forth and repeated at length herein.

16572546V.2 049954/1174163

64.     The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are the sole assets of Borrower.

65.     Except for certain limited qualifications as set forth in the Loan Documents, Borrower has no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

66.     The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

67.     Borrower and its agents are still in possession of Borrower's Assets.

68.     Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrower's Assets suffering continuous waste and a dissipation or diminution in value, if Borrower remains in control of Borrower's Assets.

69.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.     Appointing a receiver of the Property and Borrower's Assets;

B.     Directing all tenants in possession of the Properties to pay the appointed receiver all rent, income and profits;

C.     Awarding Plaintiff its costs of suit and attorneys' fees; and

D.     Granting such other relief as is equitable and just.

16572546V.2 049954/1174163

## FIFTH COUNT
### (Breach of the Guaranty)

70.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 69 above, as if the same were set forth and repeated at length herein.

71.    In order to induce Original Lender to make the Loan to Borrower, Guarantor executed, acknowledged and delivered to Original Lender the Guaranty.

72.    Pursuant to the terms of the Guaranty, Guarantor irrevocably and unconditionally covenants and agrees that he is liable for the Guaranteed Obligations (as defined therein), and that Guarantor shall fully perform each and every term and provision thereof.

73.    Moreover, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable attorney's fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

74.    Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

75.    As a result of the Cash Management Default, there has been either a misapplication, misappropriation or conversion by Borrower of Gross Revenue for which Guarantor is personally liable to Plaintiff under the Guaranty for such Gross Revenue that misapplied, misappropriated or converted since at least February 21, 2019 in an amount to be determined.

76.    No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A.    Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

16

16572546V.2 049954/1174163

B.      Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

E.      Awarding Plaintiff its costs of suit and attorneys' fees; and

F.      Granting such other relief as is equitable and just.

Dated: New York, New York
       March 6, 2020

               **KILPATRICK TOWNSEND & STOCKTON LLP**

               By: _____
                   Keith M. Brandofino, Esq.
                   David V. Mignardi, Esq.
                   Attorneys for Plaintiff
                      *Wells Fargo Bank, National Association,*
                      *as Trustee, for the Benefit of the Holders of*
                      *COMM 2015-LC19 Mortgage Trust*
                      *Commercial Mortgage Pass-Through*
                      *Certificates acting by and through Midland*
                      *Loan Services, a Division of PNC Bank,*
                      *National Association*
                   1114 Avenue of the Americas
                   New York, New York  10036
                   (212) 775-8700

16572546V.2 049954/1174163

EXHIBIT

1

## EXHIBIT A

## LEGAL DESCRIPTION

All that certain plot, piece or parcel of land situate, lying and being at Woodside, in the Second Ward of the Borough and County of Queens, City and State of New York, shown and designated as and by the lots numbered 610, 633, 634, 635, 636 and 637 in Block 22 on a certain map entitled, "Map of North Woodside, in the Town of Newton, Queens County, L.I., belonging to J. Henry Dick and filed in the Office of the Clerk, Now Register, of the County of Queens, August 23, 1895, under file number 964 and which said lots when taken together as one parcel are more particularly bounded and described as follows:

BEGINNING at a point on the Northerly side of Northern Boulevard 25 feet West of the intersection of the Northerly side of Northern Boulevard and the Westerly side of 57th Street as Northern Boulevard and 57th Street are laid out on the Topographical Maps of the City of New York, 100 feet and 80 feet wide, respectively;

RUNNING THENCE Northerly parallel with the Westerly side of 57th Street, 100 feet;

THENCE Westerly parallel with the Northerly side of Northern Boulevard 75 feet;

THENCE Northerly and parallel with the Westerly side of 57th Street, 25 feet;

THENCE Westerly parallel with the Northerly side of Northern Boulevard 100 feet to the Easterly side of 56th Street, formerly Fourth Street ( 50 feet wide );

THENCE Southerly along the Easterly side of 56th Street, 25 feet;

THENCE Easterly parallel with the Northerly side of Northern Boulevard, 50 feet;

THENCE Southerly parallel with the Easterly side of 56th Street, 100 feet to the Northerly side of Northern Boulevard;

THENCE Easterly along the Northerly side of Northern Boulevard 125 feet to the point or place of BEGINNING.

*Said premises being more commonly known as: **56-15 NORTHERN BOULEVARD, WOODSIDE, NEW YORK***

County: **QUEENS**

Block: **1158**        Lot: **120**