UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
WELLS FARGO BANK, NATIONAL                            :
ASSOCIATION, AS TRUSTEE, FOR THE                      :
BENEFIT OF THE HOLDERS OF COMM                        :
2015-LC19 MORTGAGE TRUST                              :          20-CV-2048 (VSB)
COMMERCIAL MORTGAGE PASS-                             :
THROUGH CERTIFICATES, acting by and                   :          **OPINION & ORDER**
through Midland Loan Services, a Division of          :
PNC Bank, National Association, as Special            :
Servicer under the Pooling and Servicing             :
Agreement dated as of February 1, 2015,              :
                                                      :
                              Plaintiff,              :
                                                      :
            - against -                               :
                                                      :
                                                      :
5615 NORTHERN LLC and SPYRO E.                        :
AVDOULOS,                                             :
                                                      :
                              Defendants.  :
------------------------------------------------------X

Appearances:

David Vincent Mignardi
Keith Michael Brandofino
Holland & Knight LLP
New York, New York
*Counsel for Plaintiff*

George Sitaras
Marco & Sitaras PLLC
New York, New York

Charles Wallshein PLLC
Charles Wallshein PLLC
Melville, NY
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Before me are 5615 Northern LLC and Spyro E. Avdoulos's (collectively the "Defendants") motion to dismiss for lack of subject matter jurisdiction ("Jurisdiction MTD") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1)[1], the motion for summary judgment of Plaintiff Wells Fargo, National Association ("Wells Fargo" or "Plaintiff") to foreclose on a mortgage of real property located at 56-15 Northern Boulevard, Woodside, New York 11377 (the "Property"), and Plaintiff's motion for appointment of a receiver (together with Plaintiff's motion for summary judgment, the "Pending Motions").

As to Defendants' Jurisdiction MTD, because I find that Plaintiff's domicile as Trustee is relevant for jurisdictional purposes, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

Plaintiff seeks foreclosure on the mortgage and the security interest associated with the mortgage, as well as to gain possession of the Property.  Additionally, Plaintiff requests an order severing its claims pled against Defendant Spyro E. Avdoulos ("Avdoulos" or "Guarantor") in the event that it may opt to seek a deficiency judgment against him later.  Because Defendants do not oppose Plaintiff's motion for summary judgment in certain material respects, and because there is no dispute of material fact as to Plaintiff's foreclosure motion, Plaintiff's motion for summary judgment is GRANTED, and therefore Plaintiff's motion for appointment of a receiver is DENIED as moot.  Because severance in this case promotes judicial economy and efficiency, and does not prejudice the rights of the Defendants, Plaintiff's request for severance under Rule 21 is GRANTED.

---

[1] Defendants brings the Jurisdiction MTD pursuant to 12(b)(6), but a claim for lack of subject-matter jurisdiction is properly raised under 12(b)(1) and I consider the motion under this rule.  *See* F.R.C.P. 12(b)(1).

I.     **Factual Background**[2]

Plaintiff is a national banking association and the holder of a security interest in the

Property.  (Pl. 56.1 ¶ 1.)[3]  Defendant 5616 Northern LLC ("Borrower") entered into a loan

agreement, dated December 17, 2014, with Ladder Capital Finance LLC ("Original Lender") to

obtain $9 million.  (*Id.* ¶¶ 2, 4.)  In return, Original Lender was granted a security interest in the

Property, as well as in certain rents generated by the Property, and on January 6, 2015, both

security interests were duly recorded in the Office of City Register of the City of New York.  (*Id.*

¶¶ 6–7.)  As part of the mortgage transaction, Avdoulos executed a guaranty agreement that

makes him responsible for the payment and performance of certain obligations due to the

Original Lender.  (*Id.* ¶ 8.)  Through a series of transactions, Plaintiff became the holder and

owner of the mortgage, the promissory note associated with it, the guaranty, and the security

interest on rents.  (*Id.* ¶ 9.)

In accordance with the terms of a document known as the "Loan Agreement," Borrower

could be in default of its mortgage obligations under a number of circumstances, each of which

would constitute an "Event of Default," and three are relevant to my consideration of the

motions.  (*See id.* ¶¶ 12, 16–17, 23–26, 29.)  The first Event of Default is entitled "Maturity

Default"—if Borrower failed to pay back "the Outstanding Principal Balance" of the loan by a

defined "Maturity Date," that failure would constitute an Event of Default.  (*Id.* ¶¶ 11–12.)

Plaintiff notified Borrower that a Maturity Default began on January 6, 2020, and continued

thereafter, and Borrower failed to cure this Event of Default.  (*Id.* ¶ 13–15.)

---

[2] This section is drawn from the various submissions of both parties in order to provide background and context for the motions and is not intended as a recitation of all the material undisputed facts.  Unless otherwise indicated, the facts set forth in this section are undisputed.

[3] "Pl. 56.1" refers to Local Civil Rule 56.1 Statement of Material Facts in Support of Plaintiff's Application for Summary Judgment and Other Relief.  (Doc. 35.)

The second relevant Event of Default is a "Lease Default," which could occur, among other ways, if Borrower failed to give timely notice to Original Lender—and thus to Plaintiff after Plaintiff took over the mortgage—about any notice of default or termination regarding a tenant's leasehold interest in the Property. (*See id.* ¶¶ 16–17.)  Mayors Auto Group LLC ("Mayors") "was a 'Significant Tenant' as defined in the Loan Agreement."[4]  (*Id.* ¶ 18.) Borrower sent Mayors a notice of termination dated February 27, 2019, in which it stated that Mayors's lease would be terminated as of May 31, 2019. (Brandofino Reply Decl. ¶¶ 4–6.)[5] Borrower never provided notice of this termination to Plaintiff. (Pl. 56.1 ¶ 19.)

The third Event of Default at issue is a "Cash Management Default." (*Id.*  ¶¶ 23–24.)  If a Lease Default occurred with regard to a "Significant Tenant" that would obligate Borrower to take action to allow Plaintiff ready access to a portion of the rents that Borrower took in from the Property. (*See id.* ¶¶ 23–26; Stephens Decl. ¶¶ 28–30.)[6]  At the time Borrower first received the loan, Mayors's lease in the Property accounted for approximately 49% of the Property's total rentable square footage, and Mayors's rental payments accounted for approximately 56% of the total annual rents generated by the Property. (Stephens Decl. ¶¶ 31–32.)  Plaintiff sent Borrower a notice of default regarding a Cash Management Default arising from the termination of

---

[4] According to Schedule I of the Loan Agreement, a Significant Tenant is "any Tenant under a Lease which, either individually, or when taken together with any other Lease with such Tenant or its Affiliates (i) covers more than twenty-five percent (25%) of the rentable square footage at the Property or (ii) constitutes more than twenty-five percent 25% of the total annual Rents." (Doc. 32-3 at 33.)

[5] "Brandofino Reply Decl." refers to the Declaration of Keith M. Brandofino in Support of Plaintiff's Application for Summary Judgment and Other Relief, (Doc. 46), and the exhibits thereto.  This declaration relies upon publicly filed documents from an adversary proceeding related to *In re Northern Boulevard Automall, LLC*, a bankruptcy proceeding initiated on March 7, 2019 in the United States Bankruptcy Court, Eastern District of New York, Case No. 19-4138-NHL (the "Bankruptcy Proceeding"). (*See* Brandofino Reply Decl. ¶¶ 3–6.)  These documents are "the sort of public filing[s] as to which judicial notice is routinely taken," which makes my consideration of them proper on a motion for "summary judgment."  *See United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*, 375 F. Supp. 3d 389, 393 n.4 (S.D.N.Y. 2019).

[6] "Stephens Decl." refers to the Declaration of Derek Stephens in Support of Plaintiff's Application for Summary Judgment and Other Relief, (Doc. 32), and the exhibits thereto.

Mayors's lease, but Borrower never took the actions that it was obligated to take in the event of a Cash Management Default and to turn over the rents and profits generated by the Property.  (Pl. 56.1 ¶¶ 27–28; Stephens Decl. ¶ 38.)

## II.   **Procedural History**

Plaintiff commenced this action on March 6, 2020.  (Doc. 1.)  Defendants answered and asserted various affirmative defenses on April 29, 2020.  (Doc. 17.)  On May 22, 2020, Plaintiff moved for the appointment of a temporary receiver.  (Doc. 18.)  That motion was fully briefed as of June 26, 2020, (*see* Doc. 25), but has yet to be decided.  On August 10, 2020, Plaintiff filed a Notice of Lis Pendens.  (Doc. 28.)

On March 30, 2021, Plaintiff filed the instant motion for summary judgment and its papers in support of its motion.  (Docs. 31–35.)  On May 18, 2021, Defendants filed papers in opposition to the motion.  (Docs. 39–42.)  Briefing was complete as of June 1, 2021, with the filing of Plaintiff's reply papers in support of its motion.  (Docs. 44–46.)

On August 19, 2022, I issued an order regarding the status of the pending motions.  (Doc. 56.)  Just four days later, Defendants filed the Jurisdiction MTD, claiming that the domicile of Wells Fargo is irrelevant to the diversity analysis because the Trust is not controlled by Wells Fargo.  (Doc. 64-2.)[7]  I ordered the parties to complete briefing on the issues raised in the Jurisdiction MTD before issuing my ruling on the Pending Motions.  (Doc. 58.)  Plaintiff filed their opposition on September 6, 2022, (Doc. 62), and Defendants filed their reply on September 10, 2022, (Doc. 63).[8]

---

[7] Defendants' original motion to dismiss for lack of subject matter jurisdiction was filed as Doc. 57, but due to filing deficiencies, the motion is ultimately filed at Doc. 64-2.

[8] Although a motion to dismiss under Rule 12(b)(1) may be raised at any time, Defendants' motion appears to be strategic and more of a delay tactic than a legitimate jurisdictional argument in light of the timing of the motion and the relevant case law.  Defendants' counsel raised the possibility of bringing a motion to dismiss based on an alleged lack of subject matter jurisdiction on April 18, 2022.  (Doc. 64-3.)  Yet, Defendants waited until August 23, 2022 to

III.   **Legal Standard**

A.   *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 08 CIV. 312 (VSB), 2022 WL 2967103, at *2 (S.D.N.Y. July 27, 2022) (quoting *Morrison v. Nat'l Australia Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010)).  "While a district court resolving a motion to dismiss under Rule 12(b)(1) 'must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction,' 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits,' in which case 'the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"  *Id.* (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014)).

"Federal Courts exercise subject matter jurisdiction where the Plaintiff has established that there is proper diversity jurisdiction."  *Wilmington Sav. Fund Soc'y, FSB v. Thomson*, No. 18-CV-3107 (NSR), 2019 WL 2603167, at *1 (S.D.N.Y. June 25, 2019).  Federal courts have

---

raise the issue, just four days after I issued an order indicating that the Pending Motions were under advisement and the parties would be notified as soon as the decision was rendered.  (Doc. 56.)

jurisdiction over controversies between "citizens of different States" by virtue of 28 U.S.C.

§ 1332(a)(1) and U.S. Const., Art. III, § 2.  The Supreme Court "established that citizens upon

whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the

controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980).  For purposes of diversity

jurisdiction, a trustee is considered a real party to the controversy "when he possesses certain

customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*,

446 U.S. at 464; *see also Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46, 49

(2d Cir. 2015).

### B. *Motion for Summary Judgment*

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287

F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is

'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is

"material" if it "might affect the outcome of the suit under the governing law," and "[f]actual

disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," and to

present such evidence that would allow a jury to find in his favor.  *Id.* at 256 (citation omitted).

To defeat a summary judgment motion, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a

party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the

court may," among other things, "consider the fact undisputed for purposes of the motion" or

"grant summary judgment if the motion and supporting materials—including the facts

considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, I must "view the evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and

may grant summary judgment only when no reasonable trier of fact could find in favor of the

nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal

quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the

record that could reasonably support a jury's verdict for the non-moving party," summary

judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"[A] plaintiff must provide more than conclusory allegations to resist a motion for summary

judgment."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  The ultimate inquiry is

"whether the evidence can reasonably support a verdict in plaintiff's favor."  *James v. N.Y.*

*Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

## IV.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A.  *Applicable Law*

"To establish whether a plaintiff is a real and substantial party to the controversy, a

crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent,

8

on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003). "[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (internal citation omitted). "[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464; *see also Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46, 49 (2d Cir. 2015) (finding Wells Fargo a real party to the controversy). Even where a special servicer or master servicer is "charged with duties to manage the Trust," this Court has recognized a trustee's power to hold, manage, and dispose of assets where the special servicer or master servicer's "power, including the power to initiate litigation, *flows from the Trustee*[.]" *Wilmington Tr., Nat'l Ass'n as Tr. for Benefit of Registered Holders of Benchmark 2018-B5 Mortg. Tr., Com. Mortg. Pass-Through Certificates, Series 2018-B5 v. 115 Owner LLC*, No. 20-CV-2157 (JMF), 2021 WL 5086368, at *1 (S.D.N.Y. Nov. 2, 2021) (emphasis in original). For purposes of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006).

### B. *Application*

Here, I find that the Plaintiff, as Trustee, is a real party to the controversy for purposes of diversity jurisdiction. The definition of "Trustee" in the PSA is "Wells Fargo Bank, National Association, a national banking association, in its capacity as Trustee, or its successor in interest, or any successor Trustee appointed as herein provided." (Doc. 64-4 at 106.) Article II of the

PSA conveys to Wells Fargo, as the Trustee, "without recourse . . . all the right, title and interest of the Depositor in and to the Mortgage Loans, including all rights to payment in respect thereof . . . and any security interest thereunder . . . in favor of the Depositor, and a security interest in all Reserve Accounts, Lock-Box Accounts, Cash Collateral Accounts and all other assets to the extent included or to be included in the Trust Fund for the benefit of the Certificateholders." (Doc. 64-4 at 116–17.)  Under the PSA, Plaintiff possesses the power to hold, manage, and dispose of the Trust's assets, and is therefore, a real party to the controversy.  *See 115 Owner LLC,* 2021 WL 5086368, at *1 (finding that plaintiff trustee was a real party where it held "in trust without recourse, for the benefit of the Certificateholders . . . all the right, title and interest . . . in, to and under . . . the Mortgage Loans.")

Defendants assert two arguments for why I lack subject matter jurisdiction over this case. First, Defendants claim that the Master Servicer, Midland Loan Services (as a division of PNC Bank), controls the Trust and therefore, the domicile of Plaintiff is irrelevant to the jurisdictional analysis as they are not a real party to the controversy.  (Doc. 64-2 at 2, 8.)[9]  However, contrary to this assertion, the PSA establishes that the Master Servicer is exercising the Trustee's rights. (*See* Doc. 64-4 at 236) ("With respect to each Mortgage Loan (other than a Non-Serviced Mortgage Loan) or Serviced Loan Combination, as applicable, the Master Servicer (or the Special Servicer, in the case of a Specially Serviced Loan) shall exercise the Trustee's rights, in accordance with the Servicing Standard, with respect to the Manager under the related Loan Documents and Management Agreement, if any."); (*id.* at 353–54) ("If the Master Servicer or the Special Servicer is terminated pursuant to this Section 7.01. . . all of its authority and power

---

[9] Defendants' claim that the domicile of Midland Loan Services and PNC Bank should be used to determine jurisdiction is a red herring since neither company would destroy diversity jurisdiction.  Midland Loan Services' principal place of business is in Overland Park, Kansas, and PNC Bank N.A. has its principal place of business in Pittsburgh, Pennsylvania.

under this Agreement . . . shall pass to and be vested in the [Trustee.]").  Therefore, with regard to the issue of diversity and subject matter jurisdiction, it is the Plaintiff's domicile as the Trustee that is relevant.

Second, Defendants allege that the jurisdictional analysis should be based on the domicile of the certificateholders that hold certificates in the Trust.  (Doc. 64-2 at 5.)  Defendants argue that Plaintiff failed to allege diversity jurisdiction "with a complete and accurate statement concerning the diversity of the certificateholders for the Plaintiff-Trust."  (Doc. 64-2 at 2.) Because Defendants "believe[] that at least one of the certificateholders of the Plaintiff-Trust is a New York LLC," they argue that "Plaintiff has failed to meet its burden of proof concerning diversity of citizenship between the parties" because a "single certificateholder's New York domicile destroys diversity jurisdiction."[10]  (*Id.* at 5–6.)  Despite this assertion, Defendants fail to provide any evidence as to why the Trust should be treated as anything other than a traditional trust in which the Trustee is the entity that matters for purposes of diversity jurisdiction.  *See 115 Owner LLC,* 2021 WL 5086368, at *2 (collecting cases).

In finding that Plaintiff, as Trustee, is a real and substantial party to the controversy, the basis for jurisdiction in this case stems from Wells Fargo.  As a national bank, Wells Fargo is considered a citizen of South Dakota because its main office is located in Sioux Falls, South Dakota.  (Doc. 1 at 1.)  As such, diversity of citizenship exists between Plaintiff and Defendants.

## V.   Plaintiff's Pending Motions

### A.  *Applicable Law*

In a foreclosure action, under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the note,

---

[10] Defendants assert that "the domicile of the certificateholders is an issue of fact" and requests "an affirmative statement from the plaintiff together with an order directing the Plaintiff to disclose the domicile of each certificateholder[.]" In finding that the Trustee is the relevant party for jurisdictional purposes, Defendants' request for an affirmative statement as to the domicile of the certificateholders is denied.

and the defendant's default.  Where . . . the defendant contests standing to foreclose, the plaintiff must prove its standing as part of its prima facie showing.  A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.

*Gustavia Home, LLC v. Rutty*, 785 Fed.Appx. 11, 14 (2d Cir. 2019) (internal citations and

quotation marks omitted); *see also JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142

A.D.3d 643, 645, 37 N.Y.S.3d 286, 289 (2016) (finding the plaintiff "sustained its burden of

demonstrating its prima facie entitlement to judgment as a matter of law by submitting the

mortgage, the note, and the affidavit of its vice president, attesting to the homeowner's default in

the repayment of her mortgage loan obligation.")  "The lender is entitled to summary judgment if

it establishes by documentary evidence the facts underlying its cause of action and the absence of

a triable fact."  *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012)

(citations omitted).

## B.  *Application*

Here, I find that Plaintiff has made out its prima facie case.  There is no dispute that

Plaintiff is the holder and owner of the mortgage, the promissory note associated with it, the

guaranty, and the security interest on rents.  (Def. 56.1 ¶ 9.)[11]  Moreover, Defendants concede

that the Maturity Default occurred, (*id*. ¶¶ 11–15), and that "Plaintiff is entitled to be paid for

principle and interest that accrued under the loan" because the Maturity Default occurred, (*see* SJ

Opp. 8).[12]  The governing agreements make clear that once "any Event of Default" occurs,

Plaintiff may enforce its rights in various ways, including by "institut[ing] proceedings . . . for

the complete foreclosure of this Mortgage."  (Stephens Decl. Ex. D § 7.1(b).)

---

[11] "Def. 56.1" refers to Defendants' Response to Plaintiff's Statement of Material Facts.  (Doc. 41.)

[12] "SJ Opp." refers to the Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.  (Doc. 40.)

Defendants only dispute Plaintiff's prima facie case insofar as it depends on whether the Lease Default or Cash Management Default ever occurred.  (SJ Opp. 6.)  However, as mentioned, Plaintiff need not establish multiple Events of Default to be entitled to foreclosure, the Maturity Default alone is sufficient.  Moreover, Defendants' argument as to the Lease Default and Cash Management Default only concerns whether Plaintiff introduced sufficient record evidence to carry its burden.  (*See id.*)  Specifically, Defendants argue that Mayors "did not terminate its lease as Plaintiff alleges," but it is the "as Plaintiff alleges" portion of that phrasing that bears the entirety of Plaintiff's argument.  (*Id.* at 7.)  The public filings are indisputable that Borrower is the one who notified Mayors of the lease termination, not the other way around as Plaintiff thought at the time it drafted its opening brief in support of this motion. (*See* Brandofino Reply Decl. ¶¶ 4–6.)  The governing agreements are clear that a Lease Default occurs where Borrower fails to "promptly furnish" to Plaintiff "any notice of default or termination received by Borrower from any Tenant, and any notice of default or termination given by Borrower to any Tenant."  (Stephens Decl. Ex. B § 4.1.10 (b).)  Accordingly, the undisputed material facts show that a Lease Default occurred.

Similarly, I find that the undisputed facts demonstrate that a Cash Management Default occurred.  Plaintiff proffered undisputed evidence indicating that Mayors was a "Significant Tenant" within the meaning of the Loan Agreement, and thus that the Mayors's lease termination triggered a Cash Management Default.  (Stephens Decl. ¶¶ 29–320); *see also* (Doc. 32-3 at 37) (indicating the annual rental income Borrower received from Mayors).)  Defendants raise no competent evidence to rebut this or to create a material factual issue.  Therefore, although not necessary for me to grant summary judgment on Plaintiff's foreclosure claim, Plaintiff has demonstrated a Maturity Default, Lease Default, and Cash Management Default.

### C.  *Affirmative Defenses*

"Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists."  *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 (E.D.N.Y. 2019) (internal citation omitted).

Defendants only advance two affirmative defenses in opposing summary judgment—unclean hands and bad faith.  However, both of these defenses are premised on Defendants' assertion that Plaintiff wrongfully attempted to collect "approximately $1 million in retroactive default interest based on unsubstantiated defaults."  (SJ Opp. 7–10.)  As a matter of law, this cannot serve to bar foreclosure.  Under New York law, "a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale."  *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018); *see also Windward Bora, LLC v. Allen*, 1:18-cv-05756-ERK-SMG, 2020 WL 5912392, at *3 (E.D.N.Y. Oct. 6, 2020) ("Disputes over the amount owed . . . does not preclude the issuance of summary judgment on the issue of foreclosure.") (internal quotation marks omitted).

Accordingly, there is no dispute of fact that would block summary judgment as to Plaintiff's entitlement to the foreclosure remedies it seeks, and summary judgment is hereby GRANTED as to the First, Second, and Third Counts of Plaintiff's complaint.  The amount of judgment of foreclosure will be determined through an inquest at a later date.

### D.  *Severance of Claim Against Guarantor*

Plaintiff requests that its claim against Guarantor be severed pursuant to Federal Rule of Civil Procedure 21 so that it can potentially seek a deficiency judgment against Guarantor later.[13]

---

[13] Plaintiff refers to the claim against Guarantor as "Count IV" in its briefing, but the complaint's "Fourth Count" is for "appointment of a receiver," whereas the "Fifth Count" is for "breach of the Guaranty."  (Doc. 1 at 15–16.)

(SJ Br. 27–28.)[14]  Defendants do not address Plaintiff's request for severance.

Plaintiff requests severance "pending completion of the foreclosure sale, receipt of proceeds thereof by Plaintiff, and if applicable, conveyance of title to Plaintiff."  (SJ Br. 28.) "[T]his Court has broad discretion to sever claims and parties, so long as in doing so the Court furthers the aims of justice, promotes judicial economy and efficiency, and avoids prejudicing the rights of any party."  *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 214 F.R.D. 152, 155 (S.D.N.Y. 2003).  I find that severance in this case promotes judicial economy and efficiency, and does not prejudice the rights of Defendants, particularly in light of the fact that Defendants do not address, let alone object to, Plaintiff's request for severance.  Accordingly, Plaintiff's request for severance under Rule 21 is GRANTED.

### E.  *Appointment of a Receiver*

Plaintiff requests that I appoint Ian V. Lagowitz of IVL Group, LLC, as the receiver over Borrower's Assets. (Appt. 4.)[15]  The appointment of a receiver would be moot at this juncture in light of the summary judgment ruling.  Given the resolution of the summary judgment motion, Plaintiff's request for a Receiver is DENIED without prejudice.  Within 30 days of this Opinion & Order, Plaintiff shall inform me by letter if it wishes to reopen the issue regarding the appointment of a receiver.

---

[14] "SJ Br." refers to the Memorandum of Law in Support of Plaintiff's Application for Summary Judgment and Other Relief.  (Doc. 34.)

[15] "Appt." refers to the Memorandum of Law in Support of Plaintiff's Application for the Appointment of a Receiver.  (Doc. 21.)

## VI.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.  Plaintiff's motion for summary judgment as to the First, Second, and Third Counts of its complaint is GRANTED.  Because severance in this case promotes judicial economy and efficiency, and does not prejudice the rights of the Defendants, Plaintiff's request for severance under Rule 21 is GRANTED.  In light of this, Plaintiff's motion for appointment of a temporary receiver should be moot, and it is thus DENIED.  Within 30 days of this Opinion & Order, Plaintiff shall inform me by letter what it requests to have done with its claim against Guarantor, and whether it wishes to reopen the issue regarding the appointment of a receiver.

An order referring this case to the designated Magistrate Judge for an inquest on the amount of the judgment of foreclosure and sale will issue.

The Clerk of Court is respectfully directed to close the open motions on the docket.

SO ORDERED.

Dated: October 27, 2022
       New York, New York

Vernon S. Broderick
United States District Judge